UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAINA OTERO,

    Plaintiff,

v.                                        Case No. 8:22-cv-2391-AAS

MARTIN J. O'MALLEY,
Commissioner of the Social
Security Administration,[1]

    Defendant.
_____/

## ORDER

    Shaina Otero requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) because her condition improved so that she was no longer disabled beginning November 13, 2018. (Doc. 16). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the memoranda submitted by the parties, the Commissioner's decision is **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

    Ms. Otero applied for SSI and was found disabled in a decision dated February 18, 2011. (Tr. 234–44). Ms. Otero's case was subsequently reviewed

---

[1] On December 20, 2023, Martin J O'Malley became the Commissioner of the Social Security Administration.

as part of the standard periodic review process and the Social Security Administration determined Ms. Otero was no longer disabled. The ALJ held a hearing and determined in a decision dated January 4, 2022, that Ms. Otero's condition had improved, and she was no longer disabled beginning November 13, 2018. (Tr. 13–61). The Appeals Council denied Ms. Otero's request for review, making the ALJ's decision final. (Tr. 1–7). Ms. Otero now requests judicial review of the Commissioner's final decision. (Doc. 1).

## II.  NATURE OF DISABILITY CLAIM

An ALJ typically follows a five-step sequential inquiry set forth in the Code of Federal Regulations (the Regulations) when deciding whether an individual is disabled,[2] determining whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 416.920; *see also Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

2

at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

When an ALJ is determining whether a disability has ended, however, the Regulations mandate following a different sequential inquiry. *See* 20 C.F.R. § 416.994(b). This sequential inquiry asks, in substance, whether a claimant (1) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (2) has experienced medical improvement; (3) has experienced medical improvement related to the ability to work; (4) has experienced medical improvement, but an exception to the medical improvement applies; (5) has current impairments that when considered in combination are severe; (6) can perform past relevant work; and (7) can perform other work that exists in the national economy. *See* 20 C.F.R. § 416.994(b).[3] "When considering a case for termination or cessation of benefits, . . . the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the claimant had experienced 'medical improvement.'" *Townsend v. Comm'r of Soc. Sec.*, No. 6:13–cv–1783–Orl–DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015) (emphasis omitted) (citing *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982), superseded by statute on other grounds as stated in *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210,

---

[3] The applicable SSI Regulation, 20 C.F.R. § 416.994(b), does not include the substantial gainful activity step.

3

1214 (11th Cir. 1991)).

The most recent favorable medical decision finding Ms. Otero disabled is dated February 18, 2011—the comparison point decision (CPD). (Tr. 19). At the time of the CPD, the ALJ found Ms. Otero had these medically determinable impairments: seizure disorder; bipolar disorder; and post-traumatic stress disorder (PTSD). (*Id.*). These impairments resulted in the RFC to perform a full range of work at all exertional levels with these non-exertional limitations:

> occasionally able to maintain concentration, persistence, and pace, and deal with the public, co-workers, and supervisors. Moreover, [Ms. Otero] would likely miss more than four days a month. In general, [Ms. Otero] has various non-exertional limitations that include an inability sustain and maintain an eight-hour workday and 40-hour workweek on a regular and continuing basis; she can perform no full-time work.

(*Id.*).

Medical improvement occurred on November 13, 2018. (Tr. 23). Ms. Otero was thirty years old at that time. (Tr. 48). Since that time, the ALJ found Ms. Otero has these medically determinable impairments: seizure disorder; degenerative disc disease, cervical, thoracic, and lumbar spine; pancreatitis; obesity; depressive disorder; bipolar disorder; anxiety disorder; personality disorder; and PTSD. (Tr. 28). However, the ALJ concluded Ms. Otero's impairments or combination of impairments fail to meet or medically equal the severity of an impairment in the Listings. (Tr. 19).

Since November 13, 2018, the impairments present at the time of the CPD decreased and Ms. Otero has the RFC to perform a reduced range of light work, including:[4]

> Standing and walking would be total of six (6) hours in the workday; total sitting of six (6) hours in the workday. Ramps and stairs climbing would be limited to occasional. There would be no climbing of ladders, ropes, or scaffolds. Balancing, stooping, kneeling, crouching, and crawling would all be restricted to occasional. There should be no exposure to hazards. She is limited to simple, routine tasks; low-stress work (i.e., no production pace or quota driven type work); occasional contact with co-workers, supervisors, and members of the public. She can adapt to occasional workplace changes.

(Tr. 32–33).

The ALJ determined Ms. Otero has a limited education and no past relevant work. (Tr. 48). However, given Ms. Otero's background and RFC, a vocational expert (VE) testified Ms. Otero could perform jobs existing in significant numbers in the national economy, such as a mail sorter, office helper, and retail marker. (Tr. 49). Based on Ms. Otero's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded Ms. Otero's

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

disability ended on November 13, 2018, and she has not become disabled again since that date. (*Id.*).

## III. ANALYSIS

### A. Standard of Review

This court reviews the Commissioner's final decision on cessation of disability under 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The key is "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." *Simpson*, 691 F.2d at 969.

It is not for this court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); *see also McRoberts v. Bowen*, 841 F.2d 1077,

6

1080 (11th Cir. 1988). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam).

### B. Issues on Appeal

Ms. Otero raises three issues on appeal. (Doc. 16). First, Ms. Otero argues the ALJ erred in finding Ms. Otero has a limited education. (*Id.*, pp. 4–5). Second, Ms. Otero argues the ALJ erred in failing to reconcile the conflict between the VE's testimony and information in the Occupational Employment Statistics maintained by the Bureau of Labor Statistics, Department of Labor. (*Id.*, pp. 5–6). Third, Ms. Otero argues the ALJ erred in finding improvement in her RFC from the CPD because Ms. Otero had moderate limitations in concentration at the time of the CPD and at the time of cessation of benefits. (*Id.*, pp. 6–7).

#### 1. Limited Education

Ms. Otero argues the ALJ erred in finding Ms. Otero has a limited education. (Doc. 16, pp. 4–5). In response, the Commissioner states Ms. Otero made inconsistent statements about her level of education and, even when applying the most limited education, Ms. Otero could still perform work as an office helper and as a retail marker. (Doc. 19, pp. 5–6).

7

The record contains conflicting information about Ms. Otero's level of education. For example, in April 2009, in connection with the CPD, Ms. Otero reported to her examining psychologist she obtained an education up to the ninth-grade level. (Tr. 1719). However, in July 2021, Ms. Otero reported to her examining psychologist her highest level of education completed was sixth grade. (Tr. 1539).

The SSA has established several categories to help evaluate a claimant's educational level. 20 C.F.R. § 416.964(b). Relevant to this appeal, a claimant has a "marginal education" if she has an ability in reasoning, arithmetic, and language skills that allow her to perform simple, unskilled jobs. 20 C.F.R. § 416.964(b)(2). Generally, the SSA considers formal schooling at a sixth-grade level or less as marginal education, which is needed to do "simple unskilled types of jobs." *Id.* In contrast, a claimant has a "limited education" if she has an ability in reasoning, arithmetic, and language skills, but not such that would permit her to perform most of the more "complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3). The SSA generally considers formal schooling at the seventh grade through eleventh-grade levels as a limited education. *Id.* A limited education does not solely consider the grade level education someone receives but considers all the factors surrounding their specific circumstance. 20 C.F.R. § 416.964(a)–(b).

The ALJ properly considered Ms. Otero's education, her day-to-day activities, and her level of comprehension to determine she had a limited education. Factors such as mathematical capabilities, judgement, memory, and ability to understand basic concepts are all considered in determining whether someone has a limited education, irrespective of grade level. *Thomas v. Comm'r of Soc. Sec.*, 497 F. App'x. 916, 919 (11th Cir. 2012). Ms. Otero can manage her finances, take care of her daughter, shop, complete household chores, and attend medical appointments without reminder. (Tr. 21). The ALJ also noted Ms. Otero can read in Spanish and English, complete the forms necessary for this matter, provide relevant responses to the questions asked, and give comprehensive information pertaining to her medical and employment history. (Tr. 22).

Even assuming *arguendo* that Ms. Otero had only a marginal education, the VE identified unskilled jobs that Ms. Otero can perform for which a marginal education is sufficient. *See* 20 C.F.R. § 416.964(b)(2). Thus, any error the ALJ committed in finding Ms. Otero had a limited education—instead of a marginal education—is harmless. *See Knight v. Comm'r of Soc. Sec.*, 783 F. App'x 962, 966 (11th Cir. 2019).

### 2. VE Testimony

Ms. Otero challenges the evidence supporting the ALJ's finding on the number of office helper jobs available in the national economy, by asserting

that the ALJ had to "resolve the conflict" between the decision finding Ms. Otero could perform jobs that existed in significant numbers in the national economy and data in the Department of Labor's Bureau of Labor Statistics data, specifically "Occupational Employment and Wage Statistics." (*See* Docs. 16-1, 16-2).

"The Social Security Regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012). Based on his or her knowledge and expertise, a "VE's testimony is therefore substantial evidence, as it is relevant evidence that a reasonable person would accept as adequate to support the conclusion that there is work available in significant numbers in the national economy that [the claimant] is able to perform." *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010).

"[The Eleventh Circuit] has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the [Occupational Employment Statistics]." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 556 (11th Cir. 2019). Thus, even when a VE's job numbers conflict with the job numbers provided by the Bureau of Labor Statistics, an ALJ has no duty to investigate or resolve this conflict. *Id.*

10

The ALJ properly found the VE's testimony to be valid when considering his extensive experience, comprehension of the labor market, and education. (Tr. 49). There was no objection from Ms. Otero during the expert's testimony as to his qualifications. Ms. Otero also never attempted to introduce this extrinsic "Occupational Employment and Wage Statistics" data. Taking both omissions from Ms. Otero into account, the extrinsic data she attempted to provide is barred from being considered on appeal.

As the Eleventh Circuit has stated: "We review only whether the ALJ's decision was supported by substantial evidence, and 'we will look only to the evidence actually presented to the ALJ.'" *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009–10 (11th Cir. 2020) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)). Courts throughout this Circuit have repeatedly rejected similar arguments. *See, e.g., Mesa v. Kijakazi*, No. 21-20424-CIV, 2022 WL 4369733, at *11 (S.D. Fla. May 11, 2022), report and recommendation adopted, No. 21-20424-CIV, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022) (rejecting the plaintiff's claim that the VE's testimony about job availability did not constitute substantial evidence based on counsel's post-hearing research); *Rosa v. Kijakazi*, No. 8:20-CV-1440-TGW, 2022 WL 16540059, at *6 (M.D. Fla. Mar. 25, 2022) (same); *Dixon v. Kijakazi*, No. 20-82316-CIV, 2022 WL 2908497, at *13 (S.D. Fla. May 26, 2022), report and recommendation adopted, No. 20-CV-82316-RS, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (same).

A court's review of an ALJ's decision is limited. The court may not substitute its own judgment for that of the ALJ. Nor is it appropriate to substitute the VE's uncontroverted testimony with Ms. Otero's post-hearing research. The well-qualified VE provided testimony about the number of jobs for each occupation, and Ms. Otero did not object to the testimony, question the VE about the testimony, or provide evidence to contradict the testimony. Thus, the ALJ properly relied on the VE's uncontroverted testimony that provides substantial evidence supporting the ALJ's decision.

### 3.    Comparison Point Decision

Ms. Otero asserts that because the psychological consultants opined at both the time of the CPD and at the time of cessation that Ms. Otero had only moderate limitations in concentration, her condition had not improved. (Doc. 16, pp. 6–7). Ms. Otero offers no further argument to support this contention.

Under the regulations, medical improvement involves "any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 416.994(b)(2)(i). In determining whether medical improvement occurred, therefore, the Commissioner must compare the medical evidence

supporting the most recent final decision finding the claimant disabled with new medical evidence. *Gombash v. Comm'r of Soc. Sec. Admin.*, 566 F. App'x 857, 859 (11th Cir. 2014) (citing *McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985)).

Here, in finding medical improvement, the ALJ properly evaluated all the evidence, and discussed it extensively. Substantial evidence demonstrated Ms. Otero's condition improved and that her RFC no longer precluded her from performing jobs that existed in significant numbers in the national economy. (*See* Tr. 32–48). Thus, remand is not required.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**, and the Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Tampa, Florida on January 12, 2024.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

13